```
         IN THE UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF MARYLAND

                                  :
SPINNAKER INSURANCE COMPANY
                                  :
    v.                            :   Civil Action No. DKC 22-1636
                                  :
CRISTINA RENDEROS, et al.
                                  :
```

**MEMORANDUM OPINION**

In this insurance coverage declaratory judgment action, Plaintiff Spinnaker Insurance Company ("Spinnaker") sued Cristina Renderos and Jose Renderos, seeking a declaration that it owes neither a defense nor indemnity to Ms. Renderos under a Homeowners Insurance Policy issued to her for a claim brought by Mr. Renderos, her brother, arising from injuries he suffered attempting to put out a fire in her home.[1]  It asserts that Mr. Renderos was a relative of Ms. Renderos and a resident of her household at the time of the incident, making him an "insured" under the Policy and thus excluded from coverage.

Ms. Renderos, one of the Defendants, has moved to dismiss and compel submission of the claim to the Maryland Insurance Administration ("MIA").  (ECF No. 6).  She asserts that the

---

[1] The complaint alleges that Ms. Renderos has tendered the claim made by Mr. Renderos to Plaintiff for investigation, defense, and indemnification.  It does not allege that a suit has been filed.

Maryland Insurance Code, § 27-1001 and Courts Article § 3-1701 require that "any party to a casualty insurance policy must first satisfy administrative remedies before asserting any claim to 'determine the coverage that exists under the insurer's insurance policy.'" (ECF No. 6-1 at 3). She recites that she has filed a complaint with the MIA that remains pending. Spinnaker, on the other hand, argues that the Maryland law cited by Ms. Renderos is simply inapplicable to this action. (ECF No. 9). Ms. Renderos did not file a reply. The court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the following reasons, the motion will be granted in part.

Section 3-1701 of the Court's Article provides that "a party may not file an action under this subtitle before the date of a final decision under § 27-1001 of the Insurance Article" (with three exceptions not applicable here). Md. Code Ann., Cts. & Jud. Proc. § 3-1701. The "subtitle" is Subtitle 17, Liability of Insurer, which consists only of § 3-1701. The section also provides:

> (b) This subtitle applies only to first-party claims under property and casualty insurance policies or individual disability insurance policies issued, sold, or delivered in the State.

and

> (d) This section applies only in a civil action:

2

>>(1)(i) To determine the coverage that exists under the insurer's insurance policy; or
>>(ii) To determine the extent to which the insured is entitled to receive payment from the insurer for a covered loss;
>>(2) That alleges that the insurer failed to act in good faith; and
>>(3) That seeks, in addition to the actual damages under the policy, to recover expenses and litigation costs, and interest on those expenses or costs, under subsection (e) of this section.

*Id.*

Spinnaker argues that, because the "underlying" claim is a third-party claim by the brother against the homeowner, it cannot be a bad faith first-party claim by the homeowner against the insurer subject to the administrative remedy requirement.

A declaratory judgment action is, in essence, a mechanism for seeking to resolve an underlying dispute. It is a procedural means to grant a remedy, and the Declaratory Judgment Act, 28 U.S.C. § 2201, does not create any substantive rights or causes of action. *Aetna Life Ins. Co. of Hartford, Conn. V. Haworth*, 300 U.S. 227, 239-40 (1937). In order to bring such an action, there must be an underlying controversy that is justiciable. To understand whether there is such an underlying controversy, the facts and issues must be recharacterized as they would arise, in this instance, as a state law breach of contract or bad faith action: If Spinnaker refuses and fails to defend or indemnify, and Ms. Renderos sues, what would that action look like? Would it be a first-party action

for coverage or something else? If, for instance, Ms. Renderos sued because Spinnaker denied coverage for her own property damage, that could be a first-party action for bad faith subject to administrative exhaustion. In this case, Ms. Renderos would be suing because Spinnaker refused to defend or indemnify her in a third-party action brought by her brother. But Ms. Renderos could still sue under Maryland law for bad faith. A decade ago, Judge Hollander discussed the statute:

> [T]he statutory cause of action for denial of coverage without good faith applies "to *first-party claims* under property *and casualty insurance policies* issued, sold, or delivered in the State [of Maryland]." C.J. § 3-1701(b) (emphasis added). "Casualty insurance" is defined in Section 1-101 of the Insurance Article. *See* C.J. § 3-1701(a)(2) ("'Casualty insurance' has the meaning stated in § 1-101 of the Insurance Article."). It includes, *inter alia*, "insurance against legal, contractual, or assumed liability for death, injury, or disability of a human being, or for damage to property." Ins. § 1-101(i)(1)(i). If the limitation to "first-party claims" were intended to exclude claims by an insured against its insurer for coverage against liability on a claim brought by a third party against the insured, the inclusion of claims for coverage under "casualty insurance" would be meaningless. Such liability claims are precisely the type that "casualty insurance" ordinarily covers. In my view, the limitation to "first-party" claims simply means that only an insured, rather than a claimant against the insured, may bring a claim under C.J. § 3-1701 against an insurer that denies coverage.

*Whiting-Turner Contracting Co. v. Liberty Mut. Ins. Co.*, 912 F.Supp.2d 321, 339 (D.Md. 2012) (alteration in original). The

court went on to hold that the plaintiff, as the insured, could bring a bad faith claim against the insurer for failing to defend or indemnify in a third-party action. The question of whether the administrative exhaustion requirement applied was expressly left open. *Id.* at 338 n.18.

Spinnaker has focused, myopically, on the nature of the eventual action that might be brought by Mr. Renderos against Ms. Renderos, as the insured, and not on the full controversy, which involves a potential bad faith claim by the insured, Ms. Renderos, against her insurer for failing to defend or indemnify her. In the absence of waiver by the parties, the administrative exhaustion requirement appears to apply to the controversy underlying this declaratory judgment action.

Spinnaker argues, in the alternative, that the administrative exhaustion requirement only applies to insured parties—that is, § 3-1701 "does not place any requirement on the *insurer* to engage in an administrative proceeding if it challenges coverage under its policy." (ECF No. 9 at 2 (emphasis added)). The case it cites, *Unitrin Auto & Home Ins. Co. v. Karp*, 481 F.Supp.3d 514, 527 (D.Md. 2020), was dealing with a counterclaim by an insured for a declaration that the insurer failed to act in good faith. In that context, the court ruled that, because there had been no final order from the MIA at the time it filed the counterclaim, the court lacked subject matter jurisdiction over that

counterclaim.[2] It did allow the insurer to seek a declaration that it owed no coverage, although it refused to grant summary judgment on that issue. It does not appear that the insured defendants raised the failure to exhaust issue in that regard.

It is not as clear as Plaintiff would wish that it does not need to file with the MIA, but Plaintiff does not seem to argue that it could not do so. More importantly, there can be no concrete controversy under Maryland law until the insured exhausts the administrative remedies or they are waived.

Ms. Renderos has filed the requisite complaint with the MIA and the existence of the administrative claim undermines the necessity for this declaratory judgment action at this time, or at

---

[2] The court also explained the ramifications, *vel non*, of the disposition of a complaint by the MIA:

> The MIA's disposition of PennyMac's complaint is not binding on this Court, and by law becomes a legal nullity upon the filing of a court action. *See Fakhoury v. Great N. Ins. Co.*, No. CIV. WDQ-12-0268, 2012 WL 1554487, at *3 (D.Md. Apr. 30, 2012) (noting that the MIA's decision is a nullity once an insured has filed a civil action under § 3-1701 of the Courts & Judicial Proceedings Article); *Thompson v. State Farm Mut. Auto. Ins. Co.*, 196 Md.App. 235, 251, 9 A.3d 112 (2010) (finding that the MIA record is not before the court and the MIA decision appears to be a nullity once the insured files a civil action).

*Unitrin Auto*, 481 F.Supp.3d at 525.

least counsels against immediate resolution.  The administrative claim is a necessary precursor to filing a complaint or counterclaim for breach of contract and bad faith.

Under the Declaratory Judgment Act, a district court "*may* declare the rights and other legal relations of any interested party seeking such declaration."  28 U.S.C. § 2201(a) (emphasis added).  "A declaratory judgment is appropriate 'when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Mut. Ben. Ins. Co. v. Lorence*, 59 F.App'x 595, 597 (4th Cir. 2003) (quoting *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996)).  There are some useful benchmarks for determining when it is appropriate to decline or defer the exercise of that discretion.  For example, "when a related state proceeding is pending, a court should consider whether the controversy 'can better be settled in the proceeding pending in the state court.'"  *Id.* (quoting *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942)).  Indeed, "where another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court, a district court might be indulging in '[g]ratuitous interference' . . . if it permitted the federal declaratory action to proceed."

*Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) (quoting *Brillhart*, 316 U.S. at 495).

The United States Court of Appeals for the Fourth Circuit has set out four factors to consider in such a case:

> (1) whether the state has a strong interest in having the issues decided in its courts; (2) whether the state courts could resolve the issues more efficiently than the federal courts; (3) whether the presence of "overlapping issues of fact or law" might create unnecessary "entanglement" between the state and federal courts; and (4) whether the federal action is mere "procedural fencing," in the sense that the action is merely the product of forum-shopping.

*United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 493–94 (4th Cir. 1998) (quoting *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 376 (4th Cir. 1994)).

Here, the factors weigh in favor of declining to proceed with this federal declaratory judgment action while the same issues involved in the action are before a state administrative body. The state legislature has created an administrative mechanism for deciding cases such as this one where parties disagree as to "the coverage that exists under the insurer's insurance policy." Md. Code Ann., Cts. & Jud. Proc. § 3-1701(d). Indeed, state law *requires* parties to go through the administrative process before seeking relief in court under that statute. The existence of an administrative body whose province is to handle cases like this suggests not only that the state has a strong interest in deciding

8

this type of case through that mechanism, but also that it has the infrastructure to decide this type of case more efficiently. And the factual and legal inquiries this court would undertake to determine whether Ms. Renderos's policy requires Spinnaker to defend or indemnify her under these circumstances are likely the very same inquiries the Maryland Insurance Administration is simultaneously undertaking. This suggests that proceeding with this declaratory judgment action could result in "unnecessary entanglement" between the state and federal bodies, such that it could be a "gratuitous interference" for this court to do so. While it cannot be said that Spinnaker is using this federal case as a device for procedural fencing, the Maryland Insurance Administration is much better suited to address the issues for the reasons discussed. Once that proceeding is concluded, the parties and this court can decide how to proceed.

Accordingly, this court will stay this action pending completion of proceedings before the MIA. The parties will be directed to file a status report promptly and periodically in the future. A separate order will follow.

                                                                                            /s/
                                                    DEBORAH K. CHASANOW
                                                  United States District Judge